IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT, MARCH TERM 1842.

## Jones *against* Dunn.

Receiving an account rendered without objection, does not preclude the party from afterwards showing an unobserved error which passed without notice, by the common blunder of all parties.

Such an error might be corrected even in a settled account, where neither party had been prejudiced by the acquiescence.

The plaintiffs proposed to defendant to act as their agent at Canton for a term of years, engaging to make consignments to an amount that would insure his commissions to amount to $25,000 per annum, at least; and subsequently they bound themselves to the fulfilment of it by the payment of the above sum annually, though from unforeseen events they should not ship the amount that would produce that sum. One of the stipulations, also, was, that the defendant's commissions should be invested in return cargoes as his separate property at Canton. The defendant agreed to the proposal for a term of two years. In the first year the commissions did not equal $25,000. The next year they considerably exceeded it; so that, together, they exceeded the $50,000. *Held*, that the commissions were to be charged separately for each year, and that the defendant was entitled to have his commissions, the first year, made up to $25,000, and to retain, in addition, all he received the second year.

THIS case is reported in 2 *Watts & Serg.* 327, and came again before the court in consequence of a difference of opinion between the parties, as to two items in the accounts, not disposed of at the former hearing. The defendant had, since that time, paid over

[Jones v. Dunn.]

to the plaintiffs the sum of $27,911.45, without prejudice to the plaintiff's claim to a further amount.

This claim consisted of two items. The first was an alleged overcharge by the defendant of the sum of $1667, factory expenses of one ship, the Globe. The contract for the term of two years, beginning on the 13th of July 1828, (see 2 *Watts & Serg*. 350), was to allow the defendant, " in lieu of factory rent, &c., if two ships arrived within each year, $1667 on each ship — if three or more within the year, $550 to be charged on such additional ships." In the contract year of 1827–8, three ships arrived out in Canton, viz. the Newport, the Woodrop Sims, and the Globe; and the plaintiffs claimed the difference between the $1667, charged for the third ship, and the $550 agreed on, viz. $1117, with twelve per cent. interest.

The second item was, that as the contract from July 13, 1828, was for two years, during which time the plaintiffs guarantied that the defendant's commissions should, at least, equal $25,000 a year, the defendant was entitled to retain, for the two years, but $50,000; and his actual commissions, during the two years, exceeded that by a large sum. The defendant contended that he was to have $25,000 in each separate year; that in the contract year of 1828–9, the amount chargeable by him, for commissions, was but $19,661; and he was entitled to retain, in addition to this, out of other moneys of the plaintiffs, the difference between that sum and the $25,000 guarantied; and that he was entitled also to retain the whole commissions received in the second year, though they considerably exceeded $25,000.

The correspondence containing the terms of the contract is cited in the opinion of the court below, and is to be found at large in 2 *Watts & Serg*. 349, 350, 351.

The case was argued by
*J. Sergeant*, for the defendant; and
*Price* and *Meredith*, for the plaintiffs.

For the *defendant*, it was contended, that as to the overcharge, if made out, the plaintiff was too late in his objection. It was debited to the plaintiffs in the defendant's account of January 31, 1829, under date of May 26, 1828. This account arrived here, and was examined and ticked by them on July 1829. The accounts were again examined in 1831. No objection of this nature was made until March 1841, and then only suggested on the former argument in this court, after the paper-book for that argument had been printed. This acquiescence makes it like a stated account, which is conclusive. *Baldw. Rep.* 540. But the paper-book shows that eight ships arrived out in Canton in four years; making the commissions no more for each of those years than the defendant was entitled to.

[Jones v. Dunn.]

2. On the other point, it is clear, that the defendant was to have his commissions every year. The plaintiff's letter of the 14th of April 1827, shows this. "We will engage to make consignments to thy address to an amount that will insure thy commissions to amount to $25,000 *per annum*, at least." And afterwards, in the same letter: "Upon being advised of thy acceptance of this proposition, we bind ourselves to the fulfilment of it by the payment of the above sum *annually*, although, from unforeseen events, we should not ship the amount that would produce this sum; but from our views and feelings, we flatter ourselves that our shipments will be to an amount that will yield thee considerably more."

For the *plaintiffs*, it was argued, on the first point, that the language of the contract was explicit. "If three ships arrive within the year" — and three did arrive. This overcharge is an error apparent on the face of the accounts; and such error may be corrected, though the account has been received and kept without objection. *Baldw.* 540.

2. On the second point it was contended, that the contract was entire for a term of two years; and an average receipt would conform to it; otherwise the commissions would be exorbitant and unjust, as the defendant would receive $25,000 for the first year, and sufficient in the second year, if added, to make his commissions, in the two years, $61,000 and upwards. Contracts of this kind are construed liberally, according to their equity; and it is established by various decisions, that where they are for services to be rendered for a term of years, though there be a monthly or annual sum fixed, they must be completed before the compensation is earned. *Abb. Ship.* 191; 8 *Cow.* 63; 12 *Johns.* 167; 13 *Johns.* 94; 1 *Watts & Serg.* 265, 301; 2 *Doug.* 564; 3 *Binn.* 332. It was further insisted that some of the commissions had been earned previously; the correspondence shows that the defendant invested in advance, and in anticipation of the arrivals of vessels; and commissions are chargeable when the services are rendered.

In *reply*, it was denied that the investments alluded to were for goods by these vessels. But the time of earning the commissions is not material. The time of the arrival of the vessels fixes the right; and it was so contended for the plaintiffs on the former argument, and was the ground of decision as to the Isabella's fourth voyage. Nor was it important, in the present question, whether the contract was entire or not; since, if it was entire, it had been fully performed by the defendant.

The opinion of the Court was delivered by

GIBSON, C. J.—In the charge of full factory expenses for the Globe, there is a clear error of $1117, made on the one hand, and

[Jones v. Dunn.]

acquiesced in on the other, palpably by mistake. It appears by the defendant's letters that the Newport and the Woodrop Sims had preceded that ship in her arrival at Canton in the same year, and he was consequently entitled by the terms of the contract to charge no more for her than $550. Now, though the charge was received without objection when the account was rendered, that does not preclude the other side from showing an unobserved error which had passed without notice by the common blunder of all parties. Such an error might be corrected even in a settled account, where neither party had been prejudiced by the acquiescence. The item, therefore, must be reformed.

The other part of the case is with the defendant. "We are emboldened," said the plaintiffs, "to make thee a proposal to remain as our agent for a further term of —— years, from the 7th mo. 13, 1828; and should it be agreeable to thee to remain, we will engage to make consignments to thy address to an amount that will insure thy commissions to amount to $25,000 at least." And subsequently: "We are willing to state distinctly that on being advised of thy acceptance of this proposition, we bind ourselves to the fulfilment of it by the *payment* of the above sum *annually*, though from unforeseen events we should not ship the amount that would produce that sum." These terms were accepted, and the blank was agreed to be filled with the period of two years.

Now, these clauses, considered in connection with an unaltered stipulation in the original agreement, which has been the basis of every subsequent one, that the defendant's commissions should be invested in return cargoes as his separate property at Canton, show very clearly that his accounts were to be closed annually at the end of the contract year: consequently, that he was entitled to the whole excess of actual commissions for each year above the guarantied amount, without regard to any deficit in the year past or to come, or to the aggregate of the commissions for the term. As by the words of the agreement payment was to be made annually, the account was to be made up annually, and not, as contended, at the close of the business; independently of which, it was necessary to close it annually that the defendant might pay himself out of the funds in his hands in order to invest his commissions in return cargoes and ship the produce of them according to the terms of the original agreement. If, then, the account were closed at the end of the year, and the balance paid, it would be a singular method of doing business to open it in order to vary the balance by subsequent events. The account was not only to be made up, but the balance was to be paid by taking credit for it, instead of being held in reserve for contingencies; and when thus paid, the money belonged to the defendant, without regard to the future. If it did not belong to him absolutely, it could not be said to belong to him at all. Had he died at the end of the first year, having received the commissions then due, his

[Jones v. Dunn.]

executor would not have been bound to refund any excess beyond the guarantied amount in case the commissions of his successor had fallen short of it for the next year; nor could the money, if not actually paid, have been detained from him in anticipation of that event. Such a detention would have been a breach of the plain terms of the contract. The argument on the part of the plaintiffs, however, is not that it could have been detained or recovered back, but that its amount might be taken into consideration to affect the question of deficiency for the other year. That, however, would cast the burthen of making up a deficiency on the defendant, and not on the plaintiffs, who by the words of the agreement are bound to bear it: a result that could be obtained only by making the contract entire. But it will not be pretended that if the defendant had received his commissions for the first year, and died the day preceding the completion of the second, his executor would have been bound to refund the whole. Yet that result would be inevitable on the principle of *Cutler* v. *Powell*, (6 *T. R.* 824), if the contract were indivisible; for the right to receive anything before performance of the whole service, would rest on the question of divisibility alone. But this contract is divisible by the very nature of its terms, which evidently have regard to a distinct set of operations for each year. Thus the plaintiffs agreed to send at least two ships annually to Canton by the way of England; and to allow the defendant for factory expenses in proportion to the number which should arrive within the year, of which the plaintiffs have just had the benefit in the reduction of the charge for the Globe. Why, then, shall they not submit to the disadvantage which results from an application of the principle to the subject of commissions, when the contract is just as divisible in regard to them as it is in regard to anything else? They must be charged separately for the particular year, and without reference to previous or subsequent deficiency or excess. In this we are of opinion the defendant's interpretation of the contract is the true one.

Judgment on the verdict accordingly.