## Sergeant's Executors *versus* Ewing.

The presentation of a petition, by the creditor of a decedent, to the Orphans' Court, for a citation to the executors to file an account; in pursuance of which a citation is issued, and an account filed; which is referred to an auditor to settle and adjust and report distribution; the creditor not appearing before him to present his claim; and the subsequent confirmation of the auditor's report; constitute no bar to an action, by the creditor, against the executors, to recover his claim against the estate.

If the creditor had presented his claim, and it had been passed upon, he would have been concluded.

In an action against executors, unless the declaration aver a *devastavit*, the pleas of no assets and *plene administravit*, are inapplicable; and the defendants are not prejudiced by pleading them.

An account rendered to a party indebted, by his creditor, and not objected to in a reasonable time, is *primâ facie* evidence against the party to whom rendered.

If the declaration contain incongruous counts, the verdict is properly entered in those to which the evidence applies.

CERTIFICATE from the Court of *Nisi Prius*.

This was an action of *assumpsit* by Jacob O. Ewing against J. Dickinson Sergeant and William S. Blight, executors of Elizabeth B. Sergeant, deceased, to recover a balance due him as agent of the testatrix in her lifetime. The declaration contained the common counts only; the first set of counts alleging money lent, &c., to the testatrix, and a promise by her; the second set, money lent, &c., to the testatrix, and a promise by the executors; and the third set, money lent, &c., to the executors, and a promise by them. The pleas were *non assumpserunt; non assumpsit testatoris;* payment and set off, with leave, &c.; no assets; *plene administraverunt;* and the following special plea:

"And the said defendants, for a further plea in this behalf, by leave of the court here for that purpose first had and obtained, say that the said plaintiff ought not to have or maintain his aforesaid action thereof, against them the said defendants, because they say that heretofore, to wit, on the 23d day of July, A. D. 1853, at the county aforesaid, the said plaintiff filed his certain petition in the Orphans' Court of the county of Philadelphia, setting forth, *inter alia*, that the said plaintiff was a creditor of the estate of the said

[Sergeant's Executors *v.* Ewing.]

Elizabeth B. Sergeant, that these defendants were her surviving executors, that they had not filed their accounts, although more than a year had elapsed since they took out letters testamentary, and praying for a citation commanding them to file their accounts of said estate; whereupon the court granted the prayer of said petition, and awarded a citation accordingly, which citation was duly issued and served upon these defendants, who, in compliance with the requisition thereof, did afterwards, to wit, on the 21st day of October 1853, file in the office of register of wills in and for said county, a full and complete account of their administration of the estate of the said Elizabeth B. Sergeant; and due notice of the filing of said account having been given according to law to all persons interested, and duly proved, and said account having been certified in due form and course to the said Orphans' Court, the said court referred said account to an auditor to audit, settle, and adjust the same, and report distribution; which said auditor having given like and legal notice to all parties interested of his said appointment, and of the purposes thereof, and of the time and place where he would sit for said purposes, did, at said place, and at said time, and by adjournment from time to time, and at divers other times, sit, as such auditor, for the purposes aforesaid, to hear the parties interested in said estate, and to take proof of, hear, and decide upon all claims against the same, and with full power so to do according to law and the acts in such case made and provided; and having so, after due notice as aforesaid, sat and heard all parties who appeared before him, and taken proof of, heard, and decided upon all claims against said estate, and the said plaintiff with full notice and knowledge of the appointment of said auditor, and the purposes thereof, and of his sitting as aforesaid, not having appeared before him, or made any claim against said estate, the said auditor did make or award, and did report to said court a full and complete distribution of the whole of the balance of said estate, to wit, of so much thereof as remained unadministered in the hands of these defendants, to and among the creditors and legatees of her, the said Elizabeth B. Sergeant; and the said award and report of the said auditor were, subsequently, to wit, on the 3d day of March, A. D. 1854, by the final decree of said Orphans' Court confirmed absolutely, and said decree of confirmation now, still is and remains in full force and effect, and not reversed or vacated, as by the record and proceedings thereof, remaining in the said Orphans' Court more fully appears; and these defendants aver that payment and distribution have been made by them in pursuance of said report, and according to the terms thereof, and of the said decree confirming the same; and this the said defendants are ready to verify; wherefore they pray judgment if the said paintiff ought to have or maintain

[Sergeant's Executors *v.* Ewing.]

his aforesaid action against the said record, and the force and effect thereof," &c.

To this special plea there was a demurrer, which, after argument, was sustained by the court, and the parties went to trial on the issues of fact.

The plaintiff below, Jacob O. Ewing, was for many years the agent of Mrs. Sergeant, having charge of all, or nearly all of her property. He kept accounts which resulted in an apparent balance against her on the 1st January 1852, of $18,589.53. This balance was the first item in the bill of particulars furnished; and with later items of debit and credit exhibited, as due on the 1st December 1854, the sum of $13,182.71, which, with interest, was the amount claimed in this action.

On the trial before LEWIS, C. J., the plaintiff called for the production of certain accounts found by the defendants among the papers of their testatrix. These were produced, and the plaintiff, after offering evidence tending to show that Mrs. Sergeant had received these accounts in her life time, and examined and acquiesced in them so far as to make them *primâ facie* evidence against her estate, offered them in evidence; the court admitted them in evidence, notwithstanding an objection by the defendants, and sealed a bill of exceptions.

The executors to rebut the case made by these accounts, and also under the pleas of "no assets,"and "*plene administraverunt,*" offered in evidence the record of the Orphans' Court, referred to in their special plea. This was objected to, and ruled out by the court, and became the subject of another bill of exceptions.

The plaintiff, after the executors had closed, offered in evidence the record of an action for mesne profits brought against him by them, in which they recovered a large verdict. This was objected to as irrelevant, but the court, "being of opinion that the evidence given might justify some claim against Mr. Ewing for not delivering up the property to his principal, according to the terms of the agency for which he is claiming compensation in this action," admitted the evidence, "for the purpose of repelling any claim for profits compensated by the verdict."

The admission of this evidence constituted another bill of exceptions.

The learned judge charged the jury that the accounts given in evidence, with the circumstances of acquiescence proved on the part of Mrs. Sergeant, were *primâ facie* evidence against her estate; but nevertheless, if any errors were pointed out and established by evidence to the satisfaction of the jury, they might be corrected.

The jury found a verdict in favour of the plaintiff below for the sum of $13,314.30. The defendants then moved in arrest of judgment, on the ground of misjoinder of counts in the declaration; upon which the court made the following order : " that the verdict be entered

[Sergeant's Executors *v.* Ewing.]

on the counts charging causes of action against the testatrix according to the evidence given on the trial; there being no evidence given on the trial of any cause of action personally against the defendants."

Judgment was entered on the verdict, in accordance with the order of the court; whereupon the defendants removed the cause, and here assigned for error: 1. That the court below erred in sustaining the demurrer to the special plea. 2. The admission and rejection of the evidence mentioned in the several bills of exception. 3. The refusal to arrest the judgment.

*E. Spencer Miller*, for the defendants.—The demurrer ought not to have been sustained. The 19th section of the Act 29th March 1832, *Brightly's Purd.* 211, applies to this case. So far as appears to the court, this estate may be insolvent. In Mitchell's Estate, 2 *Watts* 89, and Stoever's Appeal, 3 *W. & S.* 155, creditors who had failed to come in before an auditor in proper time, were held to be barred. The Orphans' Court has now concurrent jurisdiction with the courts of common law, whether the estate be solvent or insolvent, to try the validity and amount of any creditor's debt: Kittera's Estate, 5 *Harris* 422; Bull's Appeal, 12 *Harris* 286; Ashford *v.* Ewing, 1 *Casey* 215. The plaintiff by his citation committed himself to the jurisdiction of the Orphans' Court; and the proceedings of that court are conclusive, as an estoppel: 2 *Smith's Leading Cases* 688. But the facts also constitute an equitable estoppel, which is equally fatal to the plaintiffs' case: Commonwealth *v.* Moltz, 10 *Barr* 530; Mitchell's Estate, 2 *Watts* 87; Stoever's Appeal, 3 *W. & S.* 155; Coates's Estate, 2 *Pars.* 260; Pry's Appeal, 8 *Watts* 254; Finney's Appeal, 3 *Barr* 315; Finney's Administrators *v.* The Commonwealth, 1 *Penn. R.* 240; Ross's Estate, 9 *Barr* 17; Benner *v.* Phillips, 9 *W. & S.* 20; Bacon's Estate, 14 *Legal Int.* 348; Baughman *v.* Kunkle, 8 *Watts* 484.

The next point is as to the admissibility of the record of the Orphans' Court in evidence. If the pleas of "no assets" and "*plene administraverunt*," are proper pleas, this evidence was relevant and pertinent: Smith *v.* Elliott, 9 *Barr* 345. Such pleas have always been pleaded in Pennsylvania: Brown v. Webb, 1 *Watts* 413; and Strohecker *v.* Drinkle, 16 *S. & R.* 38.

The next point is on the admissibility of the accounts, and the charge that they were *primâ facie* evidence. See Killam *v.* Preston, 4 *W. & S.* 14, and Spangler *v.* Springer, 10 *Harris* 460.

In this case the accounts were produced by the executors on call, as accounts found among the papers of their testatrix. Of course no acquiescence by the executors could affect them, and there was no proof whatever, when these accounts had been presented to Mrs. Sergeant.

To lay ground for their introduction, a Mr. Wright was sworn,

[Sergeant's Executors *v.* Ewing.]

who testified in substance, that the last of the series, an account numbered 22, was brought to him just before Mrs. Sergeant's death, by William S. Blight, who wanted to look at the books of Mr. Ewing; that after looking at them he appeared excited and went away; that he returned again soon after, and said that Mr. Ewing had corrected the mistake, and now it was right; that William S. Blight was Mrs. Sergeant's grandson, and lived with her, that he was bookkeeper for Mrs. Sergeant and Mr. Ewing, that he attended to all Mrs. Sergeant's business, except what Mr. Ewing attended to, collected rents and drew leases; that he, the witness, saw Mrs. Sergeant the spring before she died, that she spoke about a correction in this account—a neglect to credit her with $300—and said she was glad to find her grandson had found out how the error had occurred; that she made no objection to any other item of the account; that he, the witness, saw her again, subsequently, and she spoke of selling a lot to raise money to pay her indebtedness to Mr. Ewing; that the words and figures "Examined January 10th, 1852, W. S. Blight," written in pencil on the account, were in Mr. Blight's handwriting.

Upon this testimony Mr. Ewing is to escape from vouching items, and cast upon Mrs. Sergeant's estate, as proved, a balance of over $18,000, resulting from an unsettled account running over more than ten years.

The record in the action for mesne profits, was only introduced in evidence to move the sympathy of the jury, by showing how large a sum had been recovered by the estate from Mr. Ewing. The mesne profits recovered in that action, were for a time after Mrs. Sergeant's death. No item of Mr. Ewing's claim arose in this interval. We set up nothing like a claim for mesne profits against him. Could we have offset to a claim against the executors, the profits of realty subsequent to her death. There was no aspect of the case which this evidence could meet.

As to the motion in arrest of judgment, Seip *v.* Drach, 2 *Harris* 352, shows that there was a fatal misjoinder. In order to have the verdict entered on the counts charging the causes of action against the testatrix, it must be perfectly clear that no evidence was offered on the other counts: Harker *v.* Orr, 10 *Watts* 248. Here the interest might have been recovered on those counts: The Bank *v.* The Commonwealth, 10 *Barr* 453; Stephens *v.* Myers, 2 *Jones* 302.

*Northrop* and *S. H. Perkins*, for the plaintiff.—The demurrer was rightly sustained. A creditor has a right to proceed against the real as well as the personal estate. A judgment is a lien against the real estate: Brown *v.* Webb, 1 *Watts* 413; Act 24th February 1834, § 20, 24, *Brightly's Purd.* 197, 200; Walker's

Estate, 3 *Rawle* 241; Hoover *v.* Hoover, 5 *Barr* 357; Cadbury *v.* Duval, 10 *Barr* 273.

The Act of 1832 does not apply to solvent estates: Mett's Appeal, 1 *Wh.* 7. The cases cited for the defendants do affect this position. There is no Act of Assembly nor decided case which confines a creditor to the Orphans' Court for the assertion of his rights against the estate of a decedent.

Here there was no estoppel: *Co. Lit.* 352 a; 3 *Bl. Com.* 308; *Steph. Pl.* 177; Commonwealth *v.* Moltz, 10 *Barr* 530; Steinhauer *v.* Witman, 1 *S. & R.* 444.

These arguments will also apply to the admission in evidence of the record of the Orphans' Court. It could not have aided the defendants or altered the verdict.

The next point made is as to the admission of the accounts, and the charge that they were *primâ facie* evidence. The strict rule laid down in Killam *v.* Preston, was overruled in Van Arminge *v.* Ellmaker, 4 *Barr* 283; and Spangler *v.* Springer, 10 *Harris* 460, sustains the ruling of the court below.

The reason why the record of the action for *mesne profits* was offered in rebuttal is explained by the evidence and by the judge's reason for its admission.

The court was right in ordering the verdict to be entered on those counts in support of which alone the evidence was given. Eddowes *v.* Hopkins, *Doug.* 376; Short *v.* Coffin, 5 *Burr.* 2730; Berryhill *v.* Wells, 5 *Binn.* 60; Paul *v.* Harden, 9 *S. & R.* 23; Perry *v.* Boileau, 10 *S. & R.* 211; Haldeman *v.* Martin, 10 *Barr* 372; Seip *v.* Drach, 2 *Harris* 352.

The opinion of the court was delivered by

THOMPSON, J.—This was an action of *assumpsit*, brought by the defendant in error, who was plaintiff below, to recover the amount of certain accounts made with the testatrix in her lifetime. To this recovery the executors interposed certain matters in law, and by way of estoppel, as follows:—

Letters testamentary having been granted to the plaintiffs in error, executors named in the will of Mrs. Sergeant, and a year and more having elapsed thereafter, Ewing, the plaintiff below, claiming to be a creditor, presented a petition to the Orphans' Court of the county of Philadelphia, praying for a citation to the executors to settle their account. The prayer was granted, the citation issued, and, in process of time, the executors filed their account, and an auditor was appointed to settle and adjust the same "and report distribution," which was performed by him, and the report confirmed by the Orphans' Court. The plaintiff took no further part in these proceedings after presenting his petition, did not appear before the auditor, or exhibit any account or claim against the estate whatever. On the trial of this case below,

[Sergeant's Executors v. Ewing.]

the executors plead specially this proceeding, and claimed for it the effect of a former recovery and judgment between the parties, and that the plaintiff could not recover in this action.

It is not doubted but, that, if the plaintiff had submitted his claim to the adjudication of the auditor, and it had been passed upon by him, and his report confirmed by the Orphans' Court, it would have been conclusive on him: Kittera's Appeal, 5 *Harris* 422; and he would have been estopped from contesting in the future·what had been passed upon under this proceeding. But he had a full right to move as far as he did for either of two purposes, or both, namely, to ascertain, by compelling a settlement of the executor's accounts, the precise amount of the personal estate, so as to govern his action in regard to proceeding to bind the realty; or, for the purpose of having his claim finally ascertained and adjusted by this tribunal, so as to claim a share in the distribution consequent on the settlement. Either purpose was legitimate, and there is surely no rule of law that will hold him bound by an adjudication to which he was stranger in fact, and wherein the subject-matter of his claim was never passed upon. There must either be evidence showing adjudication, or law that the party was bound to submit his claim to the tribunal, in default of which he would be as fully bound as if he had submitted. We think that neither of these necessary elements existed in this case. " We look to the *narr.* to see what was passed upon:" Buffington v. Burhman, 4 *Penn. L. J.* 418. This is generally the medium of proof in courts of record; and, in every other tribunal, we look for something equally indicative. Here, however, it is not claimed that the plaintiff submitted his accounts to the executors, or that they were passed upon by the auditor, or distribution made to him. But this part of the case was placed upon the ground of estoppel, either by matter of record or *in pais.* It cannot be an estoppel of record, for there is no record; and, besides, the jurisdiction did not attach upon plaintiff's claim by a mere presentation of his petition, which may have been for either of two purposes, as we have shown, materially different. Even if it might have been helped by proof, the fact of adjudication does not exist.

Was it an estoppel by matter *in pais?* There is not one element to constitute this result. " It is now established," says Mr. Justice BELL, " that in all cases, when an act is done, or a statement made, by a party, the truth or efficacy of which it would be a fraud on his part to controvert or impair, the character of an estoppel shall be given to what would otherwise be mere matter of evidence:" Commonwealth v. Moltz, 10 *Barr* 527; for which he cites many authorities. This is the great test of estoppels *in pais.* Whenever the acts or declarations of a party mislead another, and induce him to invest money, or change his rights, so that, without maintaining intact the position occupied by the party so induced, it

[Sergeant's Executors *v.* Ewing.]

would result in injury to him, and would be a fraud on him to set him back to the point from which he had been misled, there the doctrine of estoppel *in pais* applies with full efficiency, and holds the party misleading to his acts and declarations, and estops him from denying the one or controverting the other. No one was misled or injured in this case. The sum for distribution was over $7000, and it was all applied to claims against the estate. The plaintiff's own claim was over $14,000. So that it is apparent, if any danger existed of injury to any one in not coming in on this fund, it was the plaintiff himself. But the consequence of not coming in is provided for by the Act of 29th March 1852. In the 19th section it provides that, when a creditor shall neglect or refuse to make his claim for debts due him, "he shall not be entitled to receive any dividends of such remaining assets:" *Purd. Dig.*, p. 211—that is, of the assets for distribution according to the provisions of the act. He cannot claim a share of them. But he is not barred from recovering a judgment, and looking to the real estate of the testator or intestate for satisfaction. The legislature have not said so, nor is there any implication but to the contrary in the act cited. Mr. Ewing pursued this course in regard to his claim, and he had full right to do so under the circumstances of this case. He goes for satisfaction out of the real estate, and it is obvious that, if he had come in for a share in the distribution, creditors, including himself, to the extent of his claim, would have had to resort to the real estate, so that in no contingency did his course result in injury to the estate of Mrs. Sergeant. There was no error therefore in sustaining the demurrer.

The executors put in the pleas of "*non assumpsit testatoris,*" "*payment with leave,*" "*set-off,*" "*no assets,*" and "*plene administraverunt.*"

The exemplication of these proceedings in the Orphans' Court, which we have just been considering, were offered under the plea of *plene administraverunt.* The testimony was overruled, and this forms the 3d assignment of error. The trial resulted in a general verdict for plaintiff, and, to prove that the court erred in rejecting the evidence, it was contended before us that this was a finding against the executors on the last named plea—rendering them personally liable. This is not so. The 7th section of the act of 24th February 1834, expressly provides "that no mispleading, or lack of pleading, by executors or administrators, shall make them liable to pay any debt or damages recovered against them in their representative character beyond the amount of the assets which in fact may have come, or may come, into their hands:" *Brightly's Purd.* 200. This act was passed to remedy what the courts had complained of as a wrong long previously. In Sinclair *v.* Wilson, 3 *Penn. Rep.* 167, the court held the following language on the subject:—"The decisions of courts of common law,

[Sergeant's Executors v. Ewing.]

by which an administrator, who neglects to plead, 'fully admin-
istered,' or 'want of assets,' is held to admit assets, are among the
most harsh and unreasonable.    It was introduced at a time when
many supposed the world ought to be governed by logic, and that
an abstract syllogism was the only test of the truth and justice
of anything.    The declaration then always, after stating the
demand against the deceased, averred that assets sufficient to pay
had come to the hands of the administrator.    The administrator
often denied the claim of the plaintiff; and, if he omitted to reply
to the averment that assets came to his hands, to say that there-
fore they did come, or that it was admitted they came to his hands,
was a *non sequiter*.    At best it only proved that his attorney was
a careless pleader.    But it was so settled; and, whether the law
is so in this state, or whether our Acts of Assembly have changed
it, I shall not inquire.    I will only say, if our statements do not
aver that assets came to the hands of the administrator, it is not
easy to *say why in his pleading he should deny what is not alleged*,
or how issue could be taken on such a plea without a departure :"
Per HUSTON, J., in 1831.    This was the feeling of the courts
before the Act of 1834.    The courts and the legislature all wanted
to get rid of the trap this plea constituted for the unwary, and
hence their decision and this act.    We shall not be likely to place
any such construction on the mispleading or non-pleading of it
as to make parties liable when they ought not be made so liable.

But it has been contended in this case that the plea being
in, the consequence of the verdict for plaintiff below was to fix
the executors for the debt.    If the Act of 1834 had never
existed, this would not have been the result.    The *narr.* con-
tains only the common counts for money had and received—lent
and advanced—work, labour, and services done and performed
—account stated, &c., without a single averment that there were
assets in the hands of the executors so as to call for the plea,
without which it was out of place; and, being put in and issue
taken on it, it was simply a departure in pleading and irregular :
Sinclair *v.* Wilson, 3 *Penn. Rep.* 167.    If the declaration had
charged the executors directly with a *devastavit*, or with having
money in their hands applicable to plaintiff's claim, then the plea
would have been a proper one.    This not being so, it was irregular,
and a clear case of mispleading, which worked no injury; certainly
not, since the Act of 1834.    There was, therefore, no error in the
decision of the court on this subject.

In the remaining assignments we perceive no error.    It is too
well settled now to be doubted, that accounts rendered to a party
indebted, by his creditor, and not objected to in a reasonable time,
are *primâ facie* evidence against the party to whom rendered :
Porter *v.* Patterson, 3 *Harris* 229; Bevan *v.* Cullen, 7 *Barr* 281;
Jones *v.* Dunn, 3 *W. & S.* 109; Killam *v.* Preston, 4 *W. & S.* 14;

[Sergeant's Executors *v.* Ewing.]

Thompson *v.* Fisher, 1 *Harris* 310; Phillips *v.* Tapper, 2 *Barr* 323. This was what the court below ruled, and we think they were right.

Nor was there any error in admitting the record in the action for *mesne profits* in evidence. It was a means of showing that a claim, by way of set-off, made by the executors, had already passed *in rem judicatum* between the testator and plaintiff, and ought not again be litigated between the same parties. It was a judgment of a competent court on the point, and was entitled to be received, and was conclusive between the parties to it as well as privies.

After verdict there was a motion in arrest of judgment, because there were incongruous counts in the *narr.* and a general verdict. We treat them as bad, if incongruous, and the court below very properly confined the verdict to the good counts: 5 *Barr* 60; 9 *S. & R.* 23; 10 *Barr* 372; 2 *Harris* 352. There being no error in the record this judgment is affirmed.

Judgment affirmed.