## Peirce, Executrix, Appellant, v. Peirce.

*Landlord and tenant—Rent—Account stated—Estoppel.*

An account of rent rendered to a tenant, and not objected to in a reasonable time, is prima facie evidence against the tenant ; but if it appears that within a reasonable time the tenant has objected, the account rendered will not be considered as an account stated.

Where an executrix submits to one of the beneficiaries under the will an account of rents and income, and includes an item of rent for the house occupied by the beneficiary, and the beneficiary promptly objects to the rent charged against her, which objection results in an agreement between her and the executrix that the amount of rent due or to become due shall thereafter be agreed upon, or be otherwise determined, the account rendered cannot be considered an account stated, nor will subsequent accounts rendered containing rent charges of the same amount be considered accounts stated, if no agreement has been reached by the parties as to the amount of the rent.

*Landlord and tenant—Executors and administrators.*

In an action by an executrix who is a testamentary trustee, to recover

rents alleged to be due by a beneficiary under the will for the use of a house occupied by the latter, if it appears from the plaintiff's accounts that she had applied defendant's share of other funds of the estate to the payment of the rent, and it also appears that the parties had not agreed upon the amount of the yearly rental, and there is evidence for the defendant that the moneys applied by the plaintiff to the rental plus water rents paid by defendant were equal to the rentals claimed, a verdict and judgment for defendant will be sustained.

Argued Feb. 12, 1901. Appeal, No. 358, Jan. T., 1900, by plaintiff, from judgment of C. P. Chester Co., Jan. T., 1899, No. 4, on verdict for defendant in case of Cidney Y. Peirce, Executrix and Trustee of Joshua N. Peirce, Deceased, *v.* Isabella E. Peirce. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit for use and occupation of a house. Before HEMPHILL, P. J.

The facts appear by the opinion of the Supreme Court, and by the charge of the court below which was as follows:

This case, as I view it, resolves itself into the determination of the single question of what was the fair rental value of the property occupied by Mrs. Peirce from April 1, 1893, down to October 1, 1898; what was a fair rental value for that property during that period?

You will recall that Joshua N. Peirce died on April 11, 1892; that he was a large real estate owner, owning quite a number of houses in this borough, amongst them the one the rent of which is in controversy; that he provided in his will that his executor should, after his death, amongst other things, attend to the renting and collecting of rents, see to the repairs, payment of taxes, etc., of this real estate, and that after deducting all the charges and expenses against these houses and ascertaining the net rent, that it should be divided between his son, Grant Peirce, his daughter, Cidney Peirce, his widow, Mrs. Isabella Peirce, and his youngest daughter, Elsie Peirce, in the proportion of one third to Cidney, one third to Grant and one sixth to each of the others. He also made Miss Cidney Peirce, the plaintiff, testamentary guardian of her half sister, Elsie.

In conformity with the provisions of this will, Miss Peirce took charge of these properties, rented them, collected the rents

and divided the net proceeds.   From the death of Mr. Peirce down to April 1, 1893, a period of almost a year, a year all but eleven days, Miss Cidney Peirce, Mrs. Isabella Peirce and Elsie lived in this house under an agreement or arrangement between themselves and Mr. Grant Peirce that no rent should be paid, and that they would contribute proportionately to the running expenses of the house.   Difficulties, however, at the end of the year or about that time, occurred between Mrs. Peirce and Miss Peirce, when Miss Peirce withdrew from this house and went to one of her own, and they have resided separate ever since.

This action is brought to recover rent from that period, from the time of their separation, from the time of Miss Peirce's withdrawal from that house, from April 1, 1893, down to October 1, 1898, a period of five years and six months.   The plaintiff claims that it should be at the rate of $300 per annum, and bases that claim on two grounds : First, that by the operation of the equitable doctrine of estoppel they are entitled to recover at the rate of $300 per year; and, secondly, that it is a fair rental value for the property.

What is meant by estoppel, as applied in this case, is that there was tendered semiannually or annually, during the whole of this period of five years and six months, stated accounts to Mrs. Isabella Peirce, in which she was charged at the rate of $300 per year for this house; that she, never having objected to that charge within a reasonable time, Miss Peirce was entitled to consider her silence as giving consent, acquiescing in the charge, and was justified in making distribution accordingly.   And, I may say to you, if there were nothing else in this case except that, and Miss Pierce would be in any way injured by reason of Mrs. Peirce's failure to protest against the charges inserted against her, within a reasonable time, I say if it would result in her injury or her loss, the equitable doctrine of estoppel would apply and she could not at this time, after having by her silence occasioned a loss to Miss Peirce, come in now and protest or defend against the charge thus made.   [But, as I recall the testimony, there is no evidence here, no satisfactory evidence at least, that Miss Peirce would, even if you should see fit to change the amount of rent from $300 to a less amount, do her any harm or injury.]   [5]   She made distribution, as she said, on that basis, but it was a distribution, as we learned after-

wards, by process of bookkeeping, at least as far as her guardianship was concerned. In order that no injury might befall her, should a different rental be fixed upon than that charged, she had the decree of the orphans' court modified for the very purpose of protecting her against loss.

As to the distribution made with Mr. Peirce, the testimony, as I recall it, was not very clear, was very unsatisfactory. Neither Miss Peirce nor Mr. Grant Peirce could give you any idea of how the account at this time stood. [So that I may say to you as far as the doctrine of equitable estoppel is concerned, it is not applicable here] [6] for that reason, and for another. These accounts commenced to run, as I said, from April 1, 1893. The first one rendered was October 1, 1893, in which the rental was put at the rate of $300 per annum, the charge being for those six months, $150. As I said before, within a reasonable time when an account of that kind is presented, if it is objectionable, the party should enter a protest against it. But, these parties, after this account was rendered, entered into an agreement by which they mutually agreed to disregard the charge therein fixed, by showing that Mrs. Peirce had agreed to pay rent, but that the amount thereof should be agreed upon between them or fixed thereafter in some way. So that Miss Peirce and all those who were parties to that agreement virtually said we will disregard the charge that has been inserted here at the rate of $300 rental per year, and we will agree between ourselves sometime, or fix it in some other way at a later period what is already now due and what may become due hereafter. Such agreement was never entered into, and it was never determined. Whose fault it was it is difficult to say. Perhaps the fault of both, because, as I recall the testimony, neither of them ever made any effort to agree or to fix upon a rental for this property. So it is that it is brought for you to fix, they having failed to agree upon it or to submit it to any other tribunal.

Since the doctrine of equitable estoppel does not, in my judgment, apply in this case for the reasons already stated, the only question for your consideration, it seems to me, is what is a fair rental for this property? The plaintiff has tried to satisfy you that the amount that she had inserted from time to time in these accounts was a fair rental value, and she calls before you for

that purpose Plummer E. Jefferis, who is a builder and contractor in the town here, and three of our active real estate agents, Mr. Brown, Mr. Way and Mr. Passmore. They all in substance agree that $300 is a fair rental value for that property, Mr. Passmore perhaps going a little higher, saying from $25.00 to $30.00 a month, which would be from $300 to $360 per year. But, all the testimony, exclusive of Miss Cidney Y. Peirce, who may be supposed to have some interest in the matter and perhaps some feeling, that is the uncontradicted testimony, as I recall it, because the defendant did not even give her own view as to the fair rental value of it, the undisputed and uncontradicted testimony, if it can be credited, and that is a question for the jury, can you credit the statements of these men? Is their judgment reliable? If it is, you will have but little difficulty, I think, in reaching the conclusion that $300 is the fair rental value of this property. The testimony of these witnesses is not, as I recall it, in anywise contradicted. However, three of these witnesses, as I recall it, in giving that as the fair rental value, say that it is based upon a custom prevailing here that at such rates the landlord pays the water rent. Now, if that is the case, and as I say it is testified to by three of the plaintiff's witnesses, as I recall it, I think by Thomas B. Brown, by Passmore and by Marshall S. Way, they all say the landlord would be required to pay the water rent. The landlord here, who is Miss Peirce, has not paid the water rent, it seems, but it was paid by Mrs. Isabella E. Peirce. She tells you that she paid for the first two years at the rate of $17.00,—this testimony is also uncontradicted—which would amount in the two years to $34.00. For the balance of the time, three and one half years, she paid at the rate of $13.00, or $45.50, making $79.50. So that if you should find that $300 was a fair rental value, as testified to by these men, and that it was based on the assumption that the landlord would pay the water rent, Mrs. Peirce would be entitled to a credit to that extent.

[Now, the testimony, as I recall it, shows that these accounts, ten in number, show in the aggregate, or when balanced up to October 1, 1898, a balance due the estate. This on the basis of $300 rent. She has charged herself in this account with $300, which shows a balance of $402.23 due the estate. One sixth of that belongs to Mrs. Peirce, and of course it would not be

proper to charge her with it. But, deducting her share of this balance, $67.04, that is on the basis now of $300, leaves a balance due by her to the estate of $335.18. Then, having paid out the water rent as I have called your attention to it, to the amount of $79.50, she would be entitled to a credit of that amount, which would reduce the balance due from her to this estate to $255.68 with interest on that amount from October 1, 1898, to the present time. Now, as I say, that is on the basis you will understand of $300, because the accounts were kept on that basis. I do not think it is disputed that is the balance shown, and it works out according to my figures in that way.

If, however, you determine that it is of less value than $300, the rental value, of course, you will make the proper deduction.] [7] But, as I said before, if you credit the testimony of these witnesses that have been called, and think their judgment is reliable on this matter, it seems to me you can reach but the one conclusion, and that is that $300 is a fair and reasonable price for the rental of this property, and it works out in the way stated according to my figures. I think it was not disputed that the balance due the estate, as embodied in the testimony of Cidney Y. Peirce when she was on the stand, on the basis of $300 a year being accounted for by her, was $402.23, less one sixth, Mrs. Peirce's share, which would leave a balance due from her to the estate of $335.18, less $79.50 of water rents paid by her, which would leave a balance due from her to the estate of $255.68, with interest on that amount, from October 1, 1898, down to the present time.

The plaintiff has requested me to charge you upon the following points :

1. That if from all the evidence it is found that for a period of years plaintiff served defendant or her attorneys with various rent accounts, each charging the defendant with rent at the rate of $300 per annum, and that during said period, from April 1, 1893, to October 1, 1898, said defendant neglected or failed to notify said plaintiff of her, the defendant's unwillingness to pay the rent as charged to her therein, and that in reliance thereupon the plaintiff made distribution upon the basis of said accounts, the verdict must be for the plaintiff for the full amount of the claim. *Answer :* Refused. [4]

2. That if, from all the evidence, the jury find that for a pe-

riod of years the plaintiff served the defendant or her attorneys with various rent accounts, each charging the defendant with rent at the rate of $300 per annum, and that during said period, from April 1, 1893 to October 1, 1898, said defendant neglected or failed to notify the plaintiff of the defendant's unwillingness to pay the rent as charged to her therein, and that the plaintiff in reliance thereupon permitted said defendant to continue in the occupancy of the premises in question, and would otherwise have taken steps to terminate said occupancy in order to substitute a tenant able and willing to pay, the verdict must be for the plaintiff for the full amount of the claim. *Answer:* I have said in my general charge all that is necessary in answer to these two points, and they must therefore be refused. [3]

3. Under all the evidence the verdict must be for plaintiff for the full amount of the claim. *Answer:* That I am unable to affirm. I must refuse that also. I have said all that is necessary in relation to that point in my general charge. [10]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (3-7, 10) above instructions, quoting them; (11) dismissing rule for new trial.

*William M. Hayes,* with him *J. Carroll Hayes,* for appellant.— Under the facts the doctrine of account stated, unquestionably applied, with the result that the items of charge for rent were prima facie binding and correct: Thompson v. Fisher, 13 Pa. 310 ; Phillips v. Tapper, 2 Pa. 323-325; Sergeant's Executors v. Ewing, 30 Pa. 75 ; Sergeant's Heirs v. Ewing, 36 Pa. 156 ; Ahl's App., 129 Pa. 26 ; Holloway's Est., 29 W. N. C. 438; Fickett v. Cohu, 14 Daly, 550 ; Welsh v. Brown, 50 N. J. Eq. 387 ; Wiggins v. Burkham, 10 Wall. 129; Talcott v. Chew, 27 Fed. Repr. 273; Knickerbocker v. Gould, 115 N. Y. 533.

The court below, we submit, was also clearly in error in refusing to permit the jury to pass upon the question of estoppel: Wilcox v. Rowley, 11 Atl. Repr. 397 ; Chapman v. Chapman, 59 Pa. 214 ; Logan v. Gardner, 136 Pa. 588 ; Woods v. Wilson, 37 Pa. 379 ; Hill v. Epley, 31 Pa. 331 ; Miranville v. Silverthorn, 48 Pa. 147 ; Moore v. Smith, 14 S. & R. 392.

The trust here being given not by name but as executrix and it being annexed to her office as such, her trust accounts can

alone be investigated, and distribution made, by the orphans' court. It has exclusive jurisdiction: Erie Dime Savings & Loan Co. v. Vincent, 105 Pa. 315; Wapples's App., 74 Pa. 100; Innes's Estate, 4 Whart. 179; Baird's Case, 1 W. & S. 288, 290; Lafferty v. Corcoran, 180 Pa. 309; Strouse v. Lawrence, 160 Pa. 421, 425; Phillips v. Allegheny Valley R. R. Co., 107 Pa. 465; Barber v. Ross, 13 Pa. C. C. R. 613.

*A. M. Holding,* with him *J. Frank E. Hause,* for appellee.— The principle of "account stated" cannot be invoked to fix the rent of this house at $300 per annum, for two reasons: (1) Because that principle has no application to accounts or statements of the character of those served upon the defendant in this case; (2) because there was no such acquiescence upon the part of the defendant as would justify an inference that she assented to the correctness of the items therein relative to the rent of this house at the rate of $300 per annum: Wister's Appeal, 86 Pa. 162; Ahl's Appeal, 129 Pa. 26; Keating v. Orne, 77 Pa. 89; Union Bank v. Knapp, 3 Pick. 96; Quincey v. White, 63 N. Y. 370; Cartwright v. Greene, 47 Barbour, 10.

The facts here upon which it is sought to found an estoppel are undisputed, and the question was one for the determination of the court: Keating v. Orne, 77 Pa. 89.

If the plaintiff has not shown that she was reasonably misled by the silence of the defendant, there is no estoppel: Larkins's App., 38 Pa. 457; Silliman v. Whitmer & Sons, 11 Pa. Superior Ct. 244; Patterson v. Lytle, 11 Pa. 53; Thompson's App., 126 Pa. 373.

No question of set-off is involved in this case.

OPINION BY MR. JUSTICE MESTREZAT, April 1, 1901:

This action was brought to recover for the use and occupation of a dwelling house in the borough of West Chester. The plaintiff claims of the defendant the sum of $1,650, being for the period of five years and six months, from April 1, 1893 to October 1, 1898, at the rate of $300 per year.

Joshua N. Peirce died on April 11, 1892, seized of a large amount of real estate in West Chester borough, consisting of a number of houses and lots, and among them the house and lot for which the rent in this suit is claimed. He left surviving

him a widow, Isabella E. Peirce, the defendant, her minor child Elsie and two adult children of a former marriage, Cidney Y. Peirce and W. Grant Peirce. He with his wife and two daughters resided, at the time of his death, in the house, the rent of which is in controversy in this action. In his will, Joshua N. Peirce gave the one third of the net rents of all his real estate to his wife and daughter Elsie, share and share alike, during the widowhood of the former, and upon her remarriage or death her interest in his estate was to cease, and was to pass to her daughter Elsie during her life with remainder to the latter's issue. After some specific bequests, he gave the residue of his estate to his two other children in equal shares and appointed them executors of his will. They were authorized to sell any of his real estate, with the proviso, however, that they should secure the interest of his widow and daughter Elsie in such part thereof as might be sold, and that the house and lot where he resided should not be sold prior to the marriage or death of his widow, without her written consent. His adult children were named as testamentary guardians of his daughter Elsie during her minority. Grant Peirce renounced his right to act as executor, and letters testamentary were granted to Cidney Peirce alone. Under the provisions of the will, the executors were authorized to take possession of, lease the real estate and collect the rents.

After her father's death, Cidney Peirce continued to reside with the widow and her daughter Elsie in her father's homestead until April 1, 1893, when she removed elsewhere, and the widow and her daughter remained there until this suit was brought. While Cidney and the widow resided together, no rent was demanded or paid for the premises and each paid an equal share of the running expenses of the house. About April 1, 1893, Mrs. Peirce was requested to sign a lease for the premises which she was occupying, but she declined to do so and assigned as a reason that her husband never expected her to pay any rent for the property.

In October, 1893, the plaintiff prepared and furnished to the defendant an account showing the rents received from, and the expenses incurred in and about, all the properties from May 1, 1892, until October 1, of that year. On the debtor side of the account appeared the following item : " To rent due from Mrs. Isabella E. Pierce for Church street house from April 1, 1893,

to October 1, 1893, $150." Every six months thereafter, until October 1, 1898, a similar account containing a like charge against the widow was rendered, except one year when a charge of $300 was made for the whole year. By an agreement, dated December 23, 1893, and executed under the hands and seals of the widow and the two adult children, it was provided, inter alia, " that Isabella E. Peirce is to pay rent for the dwelling house occupied by her, the amount due and to become due to be hereafter agreed upon, or to be otherwise determined."

It appears from the plaintiff's testimony that she collected the rents of all the properties of the estate, except that in the possession of the defendant, and paid the latter her share in cash until June 8, 1893. Thereafter the plaintiff applied the defendant's share of the net income to the payment of the rent claimed to be due by her. This amounted to $1,247.77, leaving a balance due the plaintiff October 1, 1898, according to her calculation, of $335.18. This does not take into account the water rent which was paid by Mrs. Peirce on the property she occupied. The rents, it is claimed by the plaintiff, were disbursed by her on a basis of $300 per annum for the property occupied by the defendant. There was no express agreement at any time between the parties as to the amount of rent " due and to become due " by the defendant, nor, prior to October 1, 1898, was there any special request by plaintiff for the payment of any balance of rent. Defendant made no demand for more money when the accounts were presented, and raised no objection to the charge therein against her of $300 per year for the property.

The testimony in the case does not justify the conclusion that the plaintiff distributed the net income from the properties to her brother and sister on the basis of a charge of $300 per annum for the rent of the premises occupied by the defendant. On the contrary, we think the inference from all the facts disclosed is that she took due precaution to protect herself in this respect until the annual rental should be determined as provided in the written agreement between the parties.

The first and second assignments of error relate to the exclusion of certain testimony of the plaintiff, by which she offered to show that she relied on the payment of the rent at the rate of $300 per year, and that if she had known that the defendant

was not willing to pay at that rate, she would have tried to get another tenant. The third and fourth assignments allege error in the court's refusal to affirm the plaintiff's first and second points for charge. These four assignments, together with the fifth and sixth assignments, raise the question as to the effect of the rendition of the successive accounts by plaintiff, including the charge of rent against Mrs. Peirce, and her action in regard thereto. It is contended by the appellant that these accounts became, under the circumstances, accounts stated against both parties, and as such fixed the defendant for $300 per annum as the rent due from her for the property she occupied, and that she is now estopped from alleging anything to the contrary. If this contention be correct, these assignments should be sustained.

It is well settled that an account rendered to a party indebted by his creditor, and not objected to in a reasonable time, is prima facie evidence against the party to whom it is rendered: Sergeant's Executors v. Ewing, 30 Pa. 75. It is said by Lord MANSFIELD in Trueman v. Hurst, 1 Term Rep. 42, that an account stated " is an agreement by both parties that all the articles are true." It must be understood by both parties that the account is a final adjustment of the items contained therein and as to the balance struck: 1 Am. & Eng. Ency. of Law (2d ed.), 443. The assent to the account rendered by the creditor by which the agreement is made on the part of the debtor may be established by the conduct of the latter, and hence by his acquiescence for a reasonable time after the account has been presented to him. The consent of the debtor must be direct and unconditional and must appear in some way, as it is his consent that imparts to an account rendered the character of an account stated: McCall v. Nave, 52 Miss. 494. But acquiescence in the correctness of the items of an account is not conclusively established by its retention by the debtor. This may be explained and successfully rebutted by showing other facts in the case. " Thus the fact of retention may be explained by showing that the party failing to object was absent from home, suffering from illness, or expected shortly to see the other party, or that the parties had already come to a disagreement when the account was rendered: " 1 Am. & Eng. Ency. of Law (2d ed.), 453. Many authorities are cited in support of this principle. In Kusterer

Brewing Company v. Friar, 99 Mich. 190, it is held that where a party renders an account which is at variance with the positive contract of the parties as to the price of the articles included therein, its silent retention does not render it an account stated.

Applying these principles to the facts of the case in hand it is clear that the account rendered by the plaintiff did not become an account stated as to the defendant. The first account was presented to the defendant by the plaintiff in October, 1893, and was a semiannual statement of the receipts of the rents and disbursements up to October 1, 1893. This contained the charge of $150, the half yearly rent of the premises occupied by the defendant. Silence on the part of Mrs. Peirce for a reasonable period would have shown an acquiescence in the charge against her and would have made her liable to account to the plaintiff for the rent at the rate of $300 per year. But, on the other hand, an objection by the defendant would have conclusively deprived the account from having that effect and would have prevented it from being used as evidence to establish the defendant's assent to that rate of rent for the premises. The facts disclosed show that Mrs. Peirce did not only not remain silent as to the charge against her, but also that she objected to it, and that her objection resulted in an agreement between the parties in interest that " the amount (of rent) due and to become due to be hereafter agreed upon, or to be otherwise determined." This agreement was made December 23, 1893, before the second semiannual statement was rendered, and must be regarded as a positive declaration by the defendant that she did not accede to the rate proposed in the account, and must be taken as the assent of the plaintiff that the rate of rent " due and to become due," should thereafter be adjusted. The agreement of the parties applied explicitly not only to the statement rendered in October, 1893, but also to all subsequent accounts, and thus deprived them of the character of stated accounts. After this contract had been entered into, the defendant was not required to notify the plaintiff of her objection to the charge in each of the several accounts, but could rely upon the rate being unfixed until it had been " agreed upon, or otherwise determined." The retention of the accounts by the defendant, under the circum-

stances, could not mislead the plaintiff into a belief that the defendant acquiesced in the charge against her, and thereby justify the plaintiff in distributing the rents of the properties or in taking any other action relative thereto on the basis of a rent of $300 per year to be paid by the defendant. Neither would the failure by the defendant to object to the accounts determine the rate, and unless the parties agreed, the rate must necessarily be determined by a court and jury, as was done in this case. There was, therefore, no account stated which would estop the defendant from having the rate of rent at which she was chargeable adjusted in this case.

The remaining assignments, except the eleventh, allege error by the court in permitting the jury to deduct from the rent due the plaintiff the defendant's share in all the rents, which was applied by the plaintiff as payments on defendant's rent as it was collected by the plaintiff. The learned counsel for the appellant contend that this was a direction to the jury to allow against the plaintiff's claim a set-off of the defendant's share of trust funds in the hands of the plaintiff as trustee, and thereby to make a distribution of said funds in the court of common pleas.

If the plaintiff's premises were correct, her conclusion would logically follow, and the action of the court below would be erroneous. The facts disclosed on the trial, however, do not show that there was five and a half years' rent due from the defendant at the time the suit was brought. It is true that the plaintiff's statement avers that amount of rent to be due and payable. But the testimony of the plaintiff herself, which is not impeached by other testimony or the facts in the case, establishes the fact that during the period for which the rent is claimed, the plaintiff collected the rents from the other properties and applied defendant's share thereof as payment for the rent due from Mrs. Peirce for the premises she occupied. She therefore did not hold Mrs. Peirce's share of the funds thus collected as moneys of Mrs. Peirce awaiting distribution by the orphans' court, but she took the responsibility of applying it to the indebtedness due the estate from the defendant. Having made this application of the money, and Mrs. Peirce not objecting, there was not five and a half years' rent due from the defendant when this action was brought, but only the bal-

ance after the deduction of the payments thus credited by the plaintiff. In fact, the plaintiff testifies that there was due the sum of $402.22, less the one sixth thereof, from the defendant after she (the plaintiff) had applied $1,247.77, the defendant's share of the rents, to the payment of the rent, due from the defendant, and that said sum is the amount claimed in this action. It is clear, therefore, that no question of set-off in the technical sense of the term arises, and that the claim in the present suit is, as stated by plaintiff, the sum named by her as a balance, computed and ascertained by her on a basis of $300 per year for the premises occupied by the defendant. Had the jury under the court's instructions found $300 to be a reasonable rent for the premises, the verdict would have been for the plaintiff for the amount she claimed. But the plaintiff's contention in this respect was not sustained by the jury, and a lower rate having been fixed as a reasonable compensation for the use of the premises by the defendant, and the aggregate thereof being in the judgment of the jury equal to the sum claimed by the plaintiff, a verdict was rendered for the defendant.

The eleventh assignment is without merit. The case was properly submitted to the jury on testimony that justified the verdict, and the learned judge of the court below committed no error in refusing to set it aside.

The assignments of error are overruled, and the judgment is affirmed.